**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**AMOS N. JONES,**
1717 Pennsylvania Avenue NW
Suite 1025
Washington, D.C. 20006,

    *Plaintiff*,

v.

**BLOOMBERG INDUSTRY GROUP, INC.,**
**d/b/a Bloomberg Law**,
1801 S. Bell Street
Arlington, VA 22202,

    *Defendant*.

---

**Civil Action No: 1:26-cv-1083**

*SERVE:*
Corporation Service Company (CSC)
100 Shockoe Slip, 2nd Floor
Richmond, VA 23219

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Amos N. Jones ("Plaintiff" or "Jones"), *pro se*, alleges as follows:

***Preliminary Statement***

1. This case is not about nuance, spin, or permissible editorial judgment. It is about

Defendant's publication and propagation of its indefensible reversal of reality.

2. On March 31, 2025, Defendant Bloomberg Industry Group, Inc., through its Bloomberg

Law service, published an article reporting on a federal court ruling involving Plaintiff Amos N.

Jones. That article did not merely overstate or exaggerate the court's decision. It falsely reported the opposite of what the court did, and portrayed Plaintiff in a false light.

3.   The court had been asked by Defendant Ogletree Deakins to dismiss all six counts of Plaintiff's complaint, with prejudice, and to terminate the six-count case in its entirety. The court refused. Instead, it dismissed one federal claim and declined supplemental jurisdiction over five remaining claims, claims that remained viable and, as the court stated in its order, could be pursued in another forum.

4.   In litigation terms, the result was straightforward: Defendant Ogletree failed to obtain dismissal of the case, and Plaintiff survived with the majority of his claims intact, including the bias-related cospiracy count pled under the D.C. Code.

5.   Bloomberg nevertheless told its readers – lawyers, judges, institutional decision-makers, and consumers seeking counsel – that Ogletree had "defeated" Plaintiff and that Plaintiff's claims had failed as implausible. That statement was not a close call. It was not a debatable characterization. It was false.

6.   To be sure, the headline in Bloomberg was: "**Ogletree Deakins Defeats Civil Rights Lawyer's Conspiracy Claims**."

7.   The lede (i.e., the opening sentence of a news article) of the article reported: "**Ogletree Deakins won't face an attorney's claims that it conspired to violate his medical-privacy rights in an employment bias lawsuit**."

8.   The falsity is not semantic. It is structural. Bloomberg's reporting did not distort the margins of the ruling; it inverted its outcome, transforming an overwhelming survival into a purported defeat.

9. The contrast with contemporaneous reporting by American Lawyer Media could not be more stark. On April 2, 2025, American Lawyer accurately reported that Plaintiff "can continue to pursue some charges in a Washington, D.C., court." That account correctly conveyed the procedural posture of the case: that the litigation was not over, that claims remained viable, and that Plaintiff retained the ability to proceed.

10. The publications' audience was thus presented with two irreconcilable narratives: one accurate, one false. The difference between them is the difference between survival and defeat, a distinction of central importance to any legal professional evaluating a lawyer's competence, credibility, and success. The Bloomberg report is widely published and available readily through the most widely used Internet search mechanisms, but the American Lawyer article is not.

11. Bloomberg had access to the same court opinion, the same docket, and the same publicly available materials as American Lawyer. The truth was not hidden. It was readily ascertainable. The divergence between Bloomberg's reporting and the objective record is therefore not attributable to ambiguity or complexity. It is attributable to reckless disregard for the truth.

12. Rather than correct its false report, Bloomberg doubled down. In a subsequent article published April 28, 2025, concerning Plaintiff's appeal, Bloomberg again characterized the case as one in which Plaintiff had "lost," repeating and reinforcing the same false narrative of total defeat.

13. By doing so, Bloomberg did not merely fail to correct its earlier misstatement; it republished and amplified it. Bloomberg's headline blared: "**Civil Rights Lawyer to Appeal Ogletree Deakins' Conspiracy Win**."

14. In defamation law, repetition of a known falsehood is not mitigation. It is evidence of actual malice.

15. The consequence of Bloomberg's reporting is predictable and severe. For a practicing civil rights attorney, public portrayal as having suffered a complete and implausible litigation defeat carries direct reputational and economic harm. Bloomberg's readership, comprised of the very professionals who evaluate legal merit, was misled into believing that Plaintiff's claims were meritless and that his case had failed outright.

16. This action seeks to correct that record and to hold Defendant accountable for publishing, and then republishing, a false narrative that reversed the outcome of a federal court proceeding.

## I. NATURE OF THE ACTION

17. This is an action for defamation (libel) and false light invasion of privacy arising from Defendant Bloomberg Industry Group, Inc.'s publication of materially false and misleading statements concerning Plaintiff, a civil rights attorney practicing in Washington, D.C.

18. On March 31, 2025, Defendant published an article titled *"Ogletree Deakins Defeats Civil Rights Lawyer's Conspiracy Claims"* (the "March 31 Article"), which falsely conveyed that Plaintiff's six-count civil-rights lawsuit had been defeated in its entirety and that his claims were implausible and meritless.

19. In truth, the district court dismissed only one federal claim and left five state-law claims including bias-related conspiracy intact – declining supplemental jurisdiction (meaning the case was not dismissed on the merits, clearing the case to continue in state court) and denying the Defendant's motion to have all six counts dismissed with prejudice.

20. Defendant's publication therefore misstated the outcome of federal litigation, damaging Plaintiff's professional reputation and standing in the legal marketplace.

## II. JURISDICTION AND VENUE

21. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) (diversity jurisdiction), as Plaintiff is a citizen of the District of Columbia and Defendant is a corporation incorporated in and with its principal place of business outside the District, and the amount in controversy exceeds $75,000.

22. Alternatively, this Court has jurisdiction under 28 U.S.C. § 1367 over supplemental claims arising from the same nucleus of operative facts.

23. Venue is proper in this District under 28 U.S.C. § 1391(b) because: Plaintiff resides and practices in this District; the reputational injury occurred in this District; and Defendant regularly conducts business in this District and published the defamatory material here.

## III. PARTIES

24. Plaintiff Amos N. Jones is a civil rights attorney and legal scholar based in Washington, D.C., and principal of Amos Jones Law Firm.

25. Defendant Bloomberg Industry Group, Inc. publishes Bloomberg Law, a national legal news service widely read by attorneys, judges, institutional clients, and consumers seeking information about the law, the courts, justice, and attorneys.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's Professional Standing

26. Plaintiff is a practicing civil rights attorney whose reputation for competence, credibility, and advocacy is essential to his livelihood.

27. Plaintiff regularly litigates in federal courts, including the U.S. District Court for the District of Columbia, the U.S. District Court for the District of Maryland, the U.S. Court for the Eastern District of Virginia, and the D.C. Circuit.

28. Since 2023, he has represented three unrelated law professors as counsel of record on petitions for writs of certiorari to the Supreme Court of the United States in their distinct and unrelated civil-rights actions from the Supreme Court of Florida, the U.S. Court of Appeals for the Sixth Circuit, and the U.S. Court of Appeals for the Second Circuit.

**B. The Underlying Litigation**

29. On November 17, 2023, Plaintiff filed a 49-page civil action in the U.S. District Court for the District of Columbia asserting multiple claims, including federal and state-law causes of action, arising from, *inter alia*, the misconduct of the defendant in that action in relation to the $250,000 settlement being paid to Jones for discrimination, retaliation, and other wrongs committed against him by his former employer, Campbell University, where he had been a unanimously promoted Associate Professor of Law in 2015 just ahead of his term as Academic Visitor to the Faculty of Law at the University of Oxford, in England.

30. In the November 17, 2023, lawsuit, Jones alleged (i) violations of 42 U.S.C. Section 1985 (federal count), (ii) tortious interference with prospective economic gain (state count), (iii) fraud (state count), (iv) tortious interference with contract (state count) (v) intentional infliction of emotional distress (state count), and (vi) bias-related conspiracy (theft, conversion of private property, and extortion) (state count expressly invoking D.C.'s "bias-related conspiracy statute," D.C. Code Section 22-3701 *et seq.* by citation in the very caption of the Complaint and elsewhere within it).

31. On February 3, 2024, the Defendant in that action moved to dismiss the complaint with prejudice, seeking to defeat all six counts.

32. On March 30, 2025, the district court:

- Dismissed the ***one* (1) federal claim**, and

- declined supplemental jurisdiction over **five remaining state-law claims**, which remained viable for refiling.

33. On Page one of the Memorandum Opinion, Judge Randolph Moss plainly wrote:

> In this action, Plaintiff Amos N. Jones, an attorney proceeding *pro se*, asserts claims against the law firm Ogletree, Deakins, Nash, Smoak & Stewart P.C. ("Ogletree"), under the Civil Rights Act of 1871, 42 U.S.C. § 1985, the D.C. Bias-Related Crime Act, D.C. Code § 22 3701 et seq., and D.C. common law. Ogletree moves to dismiss the complaint for failure to state a claim. For the reasons given below, the Court will GRANT Ogletree's motion to dismiss Count One of the complaint and will DECLINE to exercise supplemental jurisdiction over Counts Two through Six of the complaint.

34. On the last page of the 17-page opinion, Judge Moss expressly provided:

> Given that this case is in its earliest stages and does not now raise any issues of federal interest, the Court concludes that judicial economy, convenience, fairness, and comity point towards declining jurisdiction over Jones's D.C. law claims. Moreover, dismissal will not affect Jones's ability to refile his claims in D.C. Superior Court.

35. The court's ruling did not dismiss the case in its entirety on the merits.

36. Plaintiff Jones was not defeated; Defendant Ogletree Deakins was.

## C. The March 31 Bloomberg Publication

37. On March 31, 2025, Defendant published the March 31 Article.

38. Defendant published the headline "Ogletree Deakins Defeats Civil Rights Lawyer's Conspiracy Claims."

39. Defendant's opening sentence (the "lede" in journalistic practice) was: "Ogletree Deakins won't face an attorney's claims that it conspired to violate his medical-privacy rights in a employment bias lawsuit."

40. The article stated, *inter alia*:

- that Plaintiff "failed to state a plausible claim," and

- that Defendant Ogletree "defeats" Plaintiff's claims.

41. These statements conveyed to readers that Plaintiff's case was wholly unsuccessful and meritless.

### D. Falsity of the Publication

42. The March 31 Article was materially false and misleading because it omitted that five claims survived, it characterized a partial procedural ruling as a complete defeat,; and it misrepresented the legal posture of the case.

43. The gist or sting of the publication – that Plaintiff's claims were wholly defeated – was false.

### E. Prior Bloomberg Knowledge and Pattern

44. Defendant had previously published inaccurate reporting about Plaintiff and later issued a correction regarding that reporting.

45. Defendant hyperlinked to that self-discredited publication from Sept. 5, 2018, in The March 31 Article, the headline to which was marked (Corrected) – an unheard-of denotation at that level of copy editing.

46. Despite this history, Defendant failed to exercise reasonable care in reporting on Plaintiff's litigation.

47. Defendant had access to all of:

- the underlying judicial opinion;
- the public docket; and
- contemporaneous reporting by other legal publications accurately describing the ruling.

48. Defendant nevertheless published the false characterization.

**F. Harm to Plaintiff**

49. The publication directly harmed Plaintiff's professional reputation.

50. As a civil rights attorney, Plaintiff relies on credibility before courts, reputation among clients, and standing within the legal community.

51. The false statements exposed Plaintiff to reputational injury, loss of prospective clients, and diminished professional opportunities.

## IV. ADDITIONAL FACTUAL ALLEGATIONS

**A. The Objective Procedural Reality: Ogletree Sought Total Defeat – and Lost**

52. In the underlying federal action, Defendant Ogletree Deakins filed a comprehensive motion to dismiss seeking complete termination of Plaintiff's lawsuit in its entirety.

53. Specifically, Ogletree argued: "The well-pleaded allegations in the Complaint do not state a claim for any of the causes of action asserted."

54. Ogletree further requested "Dismissal with prejudice … because further amendment would be futile."

55. The motion expressly targeted **all six counts** of Plaintiff's complaint, including: Count One – § 1985; and Counts Two through Six – state-law tort claims

56. Thus, the relief sought by Ogletree was unequivocal: complete dismissal of the entire case, with prejudice, and without leave to amend.

**B. The Court's Actual Ruling: Rejection of Ogletree's Core Litigation Objective**

57. On March 30, 2025, the district court rejected Ogletree's request for total dismissal.

58. Instead, the court dismissed only **one federal claim**, and declined supplemental jurisdiction over the remaining **five state-law claims**, expressly leaving them viable for refiling "[g]iven that this case is in its earliest stages."

59. Critically, the court *did not grant Ogletree the relief it sought* – namely, dismissal of all claims, dismissal with prejudice, <u>or</u> termination of the case on the merits.

60. As a matter of litigation reality: Ogletree lost its central motion objective, and Plaintiff retained five live claims.

61. This outcome constitutes, in ordinary legal parlance:

- a partial defense victory at most, but

- a failure to obtain dispositive relief, and thus

- a litigation survival – and therefore functional victory – for Plaintiff.

**C. Accurate Contemporary Reporting: American Lawyer Media**

62. American Lawyer Media accurately reported the ruling, reporting in its headline matter that "Judge allowed the plaintiff to continue to pursue some claims in a D.C. court," while "Federal Judge Rules Against Claims Ogletree Deakins Led 'Medical Harassment Campaign'" and stating that the judge "also stated Jones can continue to pursue some charges in a Washington, D.C., court."

63. That report correctly conveyed that:

- the case was **not over**,
- claims remained viable, and
- Plaintiff's litigation posture survived.

64. American Lawyer also demonstrated care to report accurately, contacting the parties for comment.

65. American Lawyer's closing paragraphs in that April 2 report likewise did not engage in defamatory or false-light publication:

> Jones said he planned to continue the case against the firm in Washington, D.C., Superior Court.
>
> "Ogletree Deakins's attempt to dismiss our six-count lawsuit has failed," Jones said in a statement. "With five of our six counts validated by Judge Moss, we are moving forward with a reunited legal team in the D.C. Superior Court, who will have more to say when we file there."
>
> Ogletree did not respond to a request for comment.

66. American Lawyer's reporting reflects the true procedural and legal posture of the case.

**D. Bloomberg Law's False Narrative**

67. In stark contrast, Bloomberg Law published its March 31, 2025, article titled:

*"Ogletree Deakins Defeats Civil Rights Lawyer's Conspiracy Claims."*

68. Bloomberg further stated that Plaintiff: "failed to state a plausible claim"

69. The article's headline and narrative conveyed that Plaintiff's case was defeated, his claims were implausible, and the litigation had effectively ended unsuccessfully.

**E. Side-by-Side Comparison of Truth vs. Publication**

70. The falsity of Bloomberg's reporting is most clearly demonstrated through direct comparison table:

### COMPARISON TABLE: FALSITY OF BLOOMBERG REPORTING

| Actual Record (Court + Motion Reality) | Bloomberg Law Representation |
| --- | --- |
| Ogletree sought dismissal of **all six counts** | "Ogletree Deakins Defeats…" |
| Court dismissed only **one claim** | Plaintiff "failed to state a plausible claim" |
| **Five claims survived** and remained viable | No mention of surviving claims |
| Court **refused total dismissal** | Implies total litigation failure |
| Plaintiff retained right to proceed, and did | Suggests case is over |

**F. The Inversion of Reality**

71. Bloomberg's reporting did not merely simplify or summarize; it reversed the outcome.

72. The true litigation posture was:

▪ Defendant sought **total victory** → and failed.
▪ Plaintiff preserved **80% of claims, including bias-related conspiracy** → and survived.

73. Bloomberg instead reported:

▪ Defendant **won**,
▪ Plaintiff **lost**, and
▪ the claims were **implausible**.

74. This is not a difference of interpretation; it is a material falsification of outcome.

**G. Readily Available Truth Ignored**

75. The correct facts were readily ascertainable from: the court's opinion, the docket, Defendant's own motion papers, and contemporaneous reporting by American Lawyer Media.

76. Bloomberg had access to all such sources.

77. Despite this, Bloomberg (a) ignored dispositive context, (b) adopted a misleading headline, and (c) omitted the survival of five claims.

**H. Evidence of Reckless Disregard (Actual Malice)**

78. Bloomberg's conduct constitutes reckless disregard for the truth because it:

    a. mischaracterized a judicial ruling that was objectively verifiable;

    b. ignored the legal significance of partial dismissal;

    c. failed to reconcile its reporting with publicly available filings;

    d. published a narrative contradicted by a peer legal publication; and

    e. omitted material facts necessary to avoid misleading readers.

79. Under D.C. Circuit precedent, including the leading actual-malice case *Tavoulareas v. Piro*, 817 F.2d 762 (D.C. Cir. 1987) (en banc), such conduct satisfies actual malice where a publisher fails to consult obvious sources, or publishes in the face of contrary facts.

80. At no point has Bloomberg Law interviewed Plaintiff about any of its coverage of him or the case on which it has twice reported over a seven-week span in 2025.

**I. Professional Harm Caused by the False Narrative**

81. Bloomberg's audience consists of attorneys, judges, institutional decision-makers, and readers of all kinds seeking counsel.

82. Those readers are led to believe that Plaintiff's claims were meritless, his litigation failed outright, he was defeated by a Defendant against whom he has in fact prevailed in previous instances, and he lacked professional competence.

83. Meanwhile, readers of American Lawyer Media understood that Plaintiff survived, claims remained viable, and the litigation was continuing.

84. Bloomberg caused reputational injury, loss of client confidence, and economic harm.

85. Bloomberg content is made widely available to the general online public worldwide, with Google search results surfacing its false reporting; American Lawyer Media, by contrast, is closed to such accessibility.

### V. COUNT I – DEFAMATION (LIBEL)

86. Plaintiff incorporates paragraphs 1-85.

87. Defendant published false statements of fact concerning Plaintiff.

88. The statements were defamatory *per se* because they impugned Plaintiff's professional competence, and suggested that his legal claims were frivolous or implausible.

89. Defendant acted with at least negligence, and with actual malice as defined in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), and applied in the D.C. Circuit in *Piro* (holding, *inter alia*, that purposeful avoidance of the truth qualifies as actual malice).

#### A. Actual Malice Allegations

90. Defendant acted with reckless disregard for the truth by:

    a. Failing to accurately review or report the district court's opinion;
    b. Ignoring readily available public records establishing the true procedural posture;
    c. Disregarding contrary, accurate reporting by peer legal publications;

     d. Publishing a materially misleading headline designed to convey total defeat;

     e. Repeating prior patterns of inaccurate reporting concerning Plaintiff.

91. Under D.C. Circuit precedent, including *Piro*, such conduct constitutes actual malice where a publisher ignores obvious sources of verification or adopts a narrative inconsistent with known facts. *Piro*, 817 F.2d at 788-92.

92. Defendant's conduct meets and exceeds that standard.

## B. Damages

93. Because the statements constitute defamation *per se*, damages are presumed.

94. Plaintiff has suffered loss of reputation in the legal community; diminished client trust; economic loss in prospective engagements; and economic loss in prospective citations as a credible authority.

## VI. COUNT II – FALSE LIGHT INVASION OF PRIVACY

95. Plaintiff incorporates paragraphs 1-94.

96. Defendant placed Plaintiff in a false light by portraying him as a lawyer whose claims were wholly dismissed and a litigant pursuing implausible or meritless claims.

97. This portrayal is highly offensive to a reasonable person, particularly in the context of professional reputation in the law.

98. Defendant acted with actual malice.

## VII. DAMAGES MODEL (REPUTATIONAL HARM – LEGAL MARKET)

99. Plaintiff's damages include both general and special damages, including:

### A. Lost Client Revenue

Plaintiff alleges lost engagements as 10-20 matters annually, with an average matter value of between $25,000 and $100,000, having an average annual impact of $400,000+.

### B. Contingent Fee Suppression

Plaintiff alleges reduced settlement leverage due to reputational harm, for an estimated loss between $1,000,000 and $10,000,000 over 24 months.

### C. Brand and Market Position Harm

Plaintiff alleges reduced speaking engagements and media opportunities at an estimated value of $10,000 to $100,000 annually.

### D. Long-Term Reputational Impairment

Plaintiff alleges a discount to future earnings capacity, for a 3-5 year horizon, in an estimated range of $500,000 to $20,000,000.

100. Plaintiff also seeks punitive damages based on Defendant's reckless and knowing misconduct.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests:

A. Compensatory damages in an amount to be determined at trial;

B. Presumed damages for defamation *per se*;

C. Special damages as proven;

D. Punitive damages;

E. Pre- and post-judgment interest;

F. Costs and attorneys' fees;

G. Such other relief as the Court deems just and proper.

## IX. JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

*Plaintiff declares under penalty of perjury that the foregoing is true and correct to the best of his knowledge.*

Respectfully submitted,

/s/ Amos N. Jones
Amos N. Jones
*pro se*
AMOS JONES LAW FIRM
1717 Pennsylvania Avenue NW, Suite 1025
Washington, D.C. 20006
Telephone: (202) 351-6187, Ext. 4
Facsimile: (202) 478-1654
Email: jones@amosjoneslawfirm.com

Date: Monday March 30, 2026